IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 19-cv-03034-RBJ

LUCKYSHOT LLC, a Colorado limited liability company,

Plaintiff,

v.

RUNNIT CNC SHOP, INC., a Colorado corporation,
JAMES COLE, an individual, and
ANDREW BLOOD, an individual,

Defendants.

---

ORDER ON DEFENDANTS' MOTION TO DISMISS

---

This matter is before the Court on defendants' motion to dismiss. ECF No. 19. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. For the reasons discussed below, defendants' motion is DENIED.

## I. FACTS

The following facts are alleged by plaintiff in its Complaint, ECF No. 2, and are assumed to be true for purposes of the pending motion. Plaintiff LuckyShot LLC ("LuckyShot") is a limited liability company with its principal place of business in Grand Junction, Colorado. ECF No. 2 at ¶1. Defendant Runnit CNC Shop, Inc. ("Runnit") is a corporation with its principal place of business in Grand Junction, Colorado. *Id.* at ¶2. Defendant James Cole is an individual residing in Mesa County, Colorado. *Id.* at ¶3. Mr. Cole is a representative of Runnit and served as its shop manager during the time of these events. *Id.* at ¶¶8, 20. Defendant Andrew Blood is

an individual also residing in Mesa County, Colorado. *Id.* at ¶4. Mr. Blood is a representative of Runnit. *Id.* at ¶8.

LuckyShot is a manufacturer and seller of commercial oil and gas plungers. It has operated its business since February 2015. ECF No. 2 at ¶7. Historically its largest customer has been Terra Energy Partners, LLC ("Terra"), a company based in Houston, Texas. *Id.* at ¶35. In 2018 LuckyShot made $943,420 in sales to Terra. *Id.* at ¶37. In 2019 LuckyShot had made $362,821 in sales from Terra by the time this lawsuit was filed, and LuckyShot states that it projected sales of over $950,000 to Terra for the entire year. *Id.*

Sometime before January 2016 plaintiff contracted Central Valley Machine ("CVM"), a machine shop in Logan, Utah, to produce plunger drawings based on plaintiff's specifications. *Id.* at ¶9. The CVM employee who prepared the drawings for plaintiff was named Neal Barrus. All of CVM's drawings denoted this with the annotation "nealb." *Id.* at ¶11.

In January 2016 LuckyShot met with representatives of Runnit, including defendants Mr. Cole and Mr. Blood. *Id.* at ¶8. The parties discussed Runnit's manufacturing plungers for plaintiff locally. *Id.* LuckyShot informed defendants that Runnit would need to agree to a nondisclosure agreement governing the plunger drawings, pricing, quotes, and any future drawings Runnit would produce for plaintiff. *Id.* at ¶12. Runnit agreed. *Id.* LuckyShot then provided defendants the CVM drawings so they could begin manufacturing the plungers. *Id.* at ¶13.

LuckyShot also asked Runnit to prepare other drawings of plungers designed by LuckyShot. *Id.* at ¶14. The drawings were generated as Computer Aided Design ("CAD") files in a software called SolidWorks. *Id.* at ¶20. Runnit produced an initial set of drawings which

LuckyShot found to be of "inferior quality." *Id.* at ¶16. Those initial drawings contained the following language:

**PROPRIETARY AND CONFIDENTIAL**

THE INFORMATION CONTAINED IN THIS DRAWING IS THE SOLE PROPERTY OF <INSERT COMPANY NAME HERE>. ANY REPRODUCTION IN PART OR AS A WHOLE WITHOUT THE WRITTEN PERMISSION OF <INSERT COMPANY NAME HERE> IS PROHIBITED.

*Id.* at ¶15. LuckyShot then had Runnit create revised plunger drawings. *Id.* The second set of drawings contained slightly different language:

**PROPRIETARY AND CONFIDENTIAL**

THE INFORMATION CONTAINED IN THIS DRAWING IS THE SOLE PROPERTY OF LUCKYSHOT. ANY REPRODUCTION IN PART OR AS A WHOLE WITHOUT THE WRITTEN PERMISSION OF LUCKYSHOT IS PROHIBITED.

*Id.* at ¶16.

Sometime in 2017 the relationship between LuckyShot and Runnit soured. LuckyShot alleges that Runnit attempted to sell and patent LuckyShot's plungers as its own. *Id.* at ¶17. These issues were initially "cleared up," and the parties continued doing business. *Id.* at ¶18. Subsequently, LuckyShot alleges, Runnit again tried to sell and patent the plungers as its own. At that point LuckyShot terminated Runnit's services completely and began manufacturing its own plungers. *Id.*

LuckyShot alleges that around August or September 2018 Runnit began modifying the plunger design drawings it had generated for LuckyShot to create its own plunger designs. *Id.* at ¶19. It alleges that Mr. Cole instructed Mr. Kenton Teske, another Runnit employee at the time, to modify the LuckyShot drawing files in the SolidWorks program. *Id.* at ¶20. Mr. Cole

instructed Mr. Teske to make various changes on three different LuckyShot designs, and Mr. Teske implemented the changes. *Id.* at ¶¶24–25; *see also* ECF No. 2-2 at ¶¶4–8. Mr. Jason Miracle, another Runnit employee, then produced plungers according to these altered designs at the direction of Mr. Cole. ECF No. 2 at ¶25; ECF No. 2-2 at ¶9. At some point Mr. Teske stopped modifying the LuckyShot SolidWorks CAD files. ECF No. 2 at ¶28; ECF No. 2-2 at ¶12. Mr. Blood and Mr. Cole hired a new employee with CAD experience, Mr. Jeff Goodrich. Mr. Goodrich took over modifying the LuckyShot plunger design drawings and designing new plungers for Runnit. ECF No. 2 at ¶29; ECF No. 2-2 at ¶13.

On May 7, 2019 LuckyShot received a "cease and desist" letter from its competitor Well Master Corporation ("Well Master"). ECF No. 2 at ¶30. The letter claimed that Well Master received two mailings containing drawings of LuckyShot's plungers. *Id.* Well Master stated that these mailings were unsolicited and of unknown origin. *Id.* at ¶42. It also claimed that the plunger designs infringed upon patents owned by Well Master. *Id.* at ¶31. The letter instructed LuckyShot to immediately stop manufacturing and selling its plungers and to destroy its plunger inventory. *Id.* The letter from Well Master included the five pages of drawings that Well Master claimed it had received. *Id.* at ¶32.

LuckyShot inspected the drawings and determined that three of them were created by CVM for LuckyShot, as indicated by the "nealb" annotation. *Id.* at ¶¶32–33. LuckyShot deduced that the other two drawings were created by Runnit because they contained the "Proprietary and Confidential" language included on all plunger design drawings that Runnit produced for LuckyShot. *Id.* A handwritten note on the drawings sent to Well Master stated that LuckyShot had been copying Well Master's patents and selling them to Terra. *Id.* ¶34.

According to Luckyshot, however, the two drawings created by Runnit had been modified in the exact ways described by Mr. Teske. *Id.* at ¶35. These changes made the original designs reflect specifications of Well Master patents. The CVM drawings were unmodified. *Id.*

LuckyShot alleges that the mailings Well Master received can be traced to Mr. Cole. *Id.* at ¶44. The envelopes are postmarked from Grand Junction. Though they do not list a sender name they have a return address of "P.O. Box 191, Palisade, Colorado 81526." *Id.* at ¶¶42–43; ECF No. 2-3. According to LuckyShot that P.O. Box belongs to Mr. Cole. *Id.* at ¶44; ECF No. 2-5 at 8. Mr. Cole and Mr. Blood also purportedly knew about LuckyShot's business relationship with Terra. ECF No. 2 at ¶45.

In addition to sending this letter to LuckyShot, Well Master informed Terra that LuckyShot had been infringing on Well Master's patents. *Id.* at ¶36. As a result LuckyShot was unsuccessful in its bid for a $1.6 million contract with Terra. *Id.*at ¶¶39–40. Terra also stopped purchasing plungers from LuckyShot that it had ordered regularly prior to receiving this communication from Well Master. *Id.* LuckyShot alleges that it also lost other bids and contracts based on rumors regarding its alleged patent infringement. *Id.* at ¶41.

## II. PROCEDURAL BACKGROUND

On October 24, 2019 Luckyshot filed this case against Runnit, Mr. Cole, and Mr. Blood. ECF No. 2. Luckyshot advances three causes of action: misappropriation of trade secrets under federal law; intentional interference with prospective contractual relations; and civil conspiracy. *Id.* Defendants filed a motion to dismiss on November 27, 2019 on the grounds that plaintiff failed to state a claim under Rule 12(b)(6), and that this Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims. ECF No. 19. Plaintiff filed a

response opposing the motion to dismiss on December 18, 2019. ECF No. 24. Defendants filed a reply brief on December 23, 2019. ECF No. 26.

LuckyShot has also sued Runnit in Mesa County District Court (case 2018CV3048) under similar causes of action as here. ECF No. 24-1. Runnit filed a motion to dismiss in that case. ECF No. 24-2. The Mesa District Court Judge granted the motion in part and denied it in part, permitting LuckyShot's claims for trade secret misappropriation and intentional interference with prospective contractual relations to go forward. ECF No. 24-4. In addition, Well Master has filed a patent infringement case against LuckyShot in this Court. ECF No. 19-2; *see also* case 19cv01617.

**III. STANDARD OF REVIEW**

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While the Court must accept the well-pled allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true. *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

If the Parties rely on materials found outside the four corners of the complaint, the court has the discretion to convert a motion to dismiss to one for summary judgment. If it does so the Court must inform the parties and permit them to meet all factual allegations with countervailing evidence. *See* FED. R. CIV. P. 12(d); *Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 713 (10th Cir. 2005). However, the court may consider evidence beyond the complaint without converting a motion to dismiss to one for summary judgment if the documents are central to the plaintiff's claims, referred to in the complaint, and if the parties do not dispute their authenticity. *See Cty. of Santa Fe, N.M. v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002). The Court may also take judicial notice of matters of public record and undisputed court documents without requiring conversion. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006).

## IV. ANALYSIS

### A. Failure to state a claim under F.R.C.P. 12(b)(6)

#### 1. Misappropriation of trade secrets under 18 U.S.C§ 1836

LuckyShot alleges that defendants violated the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1831 *et seq*. This federal trade secrets statute creates a private cause of action. "An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). The term "trade secret" is defined to include

> [A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—

> (A) the owner thereof has taken reasonable measures to keep such information secret; and
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C § 1839(3). The Act defines "misappropriation" in relevant part as

> . . . (B) disclosure or use of a trade secret of another without express or implied consent by a person who . . . (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret . . .

18 U.S.C. § 1839(5).

To state a claim for relief under 18 U.S.C. § 1836 a plaintiff must allege (1) the existence of a trade secret; (2) misappropriation of that trade secret; and (3) how the trade secret implicates interstate or foreign commerce. *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070, 1086 (D. Colo. 2018) (citations omitted). A trade secret "can exist in a combination of characteristics and components" where "the unified process, design and operations of which, in unique combinations, affords a competitive advantage and is a protectable secret." *zvelo, Inc. v. Akamai Techs., Inc.*, No. 19-CV-00097-PAB-SKC, 2019 WL 4751809, at *3 (D. Colo. Sept. 30, 2019) (quoting *Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1109 (10th Cir. 2009) (applying Colorado trade secrets law)).

Taking its factual allegations as true and resolving all inferences in its favor, LuckyShot has adequately stated a claim under 18 U.S.C. § 1836. First, it has alleged the existence of trade secrets, namely specifications for plungers that would be used "to create a unique plunger design" which plaintiff planned to patent. ECF No. 2 at ¶10. Those specifications were codified in drawings created both by CVM and by Runnit. *Id.* at ¶¶9, 14. Though Runnit generated some

of the design drawings, LuckyShot was the owner of the actual information captured in the drawings. *Id.* at ¶¶15–16. LuckyShot also alleges that its proprietary plunger design "enabled it to market those plungers . . . to customers such as Terra for substantial amounts." *Id.* at ¶51. Through sale of these unique-design plungers LuckyShot generated over $1.3 million in revenue from Terra in 2018 and 2019. As a result the designs unquestionably have independent economic value. LuckyShot thus sufficiently alleges that these specifications are a "plan" or "design" from which it "derives independent economic value . . . from not being generally known [or] readily ascertainable." 18 U.S.C. § 1389(3).

Second, LuckyShot has sufficiently alleged misappropriation of its trade secrets by Runnit. Lucksyhot claims that Mr. Cole asked Kenton Teske to modify the drawings created from plaintiff's specifications in order to create different plunger designs. *Id.* at ¶¶19–24. Mr. Teske made these changes by altering the SolidWorks CAD file of plaintiff's original design. *Id.* LuckyShot alleges that defendants then manufactured plungers based on the modified design. *Id.* at ¶¶25–27. LuckyShot alleges that before these modifications and subsequent production occurred, Runnit agreed to execute a nondisclosure agreement. The purpose of this agreement was to prevent LuckyShot's plunger drawings from falling into the hands of LuckyShot's customers or competitors, and to protect LuckyShot's pricing, quotes, and future drawings produced by Runnit for LuckyShot. *Id.* at ¶¶12–16. Further, the drawings Runnit produced include language stating they were "proprietary and confidential." *Id.* at ¶¶15–16. Together these allegations suggest defendants were on notice that they could not use or disclose the plunger specifications without LuckyShot's consent. LuckyShot has thus adequately alleged they suffered "use of a trade secret . . . without express or implied consent by [defendants] who .

. . knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C. § 1839(5)(b)(ii)(II).

LuckyShot also asserts that defendant Cole mailed drawings of the plungers to its competitor Well Master. ECF No. 2 at ¶¶30, 42–44. Well Master evidently said the packages containing the drawings were "unsolicited and of unknown origin," while LuckyShot states the P.O. Box listed as a return address belongs to Mr. Cole. *Id.* at ¶¶42–44. It supports this assertion with land use records from Mesa County. ECF No. 2-5 at 8. Construing the facts most favorably to plaintiff, and resolving all inferences in its favor, LuckyShot's allegation is enough to overcome a motion to dismiss. Thus, LuckyShot has also sufficiently alleged "disclosure . . . of a trade secret . . . without express or implied consent" by defendants. 18 U.S.C. § 1839(5)(b)(ii)(II).

Third, LuckyShot has put forth sufficient allegations that its trade secrets implicate interstate or foreign commerce. In its complaint LuckyShot writes that it sells its oil and gas plungers in interstate commerce. ECF No. 2 at ¶7. LuckyShot specifically notes that its largest customer, Terra, is based in Texas, and that it hired Utah-based company CVM to produce drawings of some of its plunger designs. *Id.* at ¶¶9, 34. These facts adequately allege that LuckyShot's purported trade secrets implicate interstate commerce.

Defendants advance multiple arguments to support their motion to dismiss under 12(b)(6). Defendants start by arguing that LuckyShot fails to allege the plunger designs "contain secret information that is not readily ascertainable" or generally known. ECF No. 19 at 5. This argument is not persuasive. LuckyShot alleges that it hired CVM to produce drawings based on

its specifications. It did this "in order to create a unique plunger design for Luckyshot that would outlast its competition and enable Luckyshot to patent its design. ECF No. 2 at ¶¶9–10. These facts suggest that no other plunger design exactly matching LuckyShot's specifications existed at the time, and therefore it could *not* have been generally known. That LuckyShot gave Runnit the CVM drawings "so that" Runnit could begin manufacturing plungers indicates that the designs were not easily ascertainable—otherwise Runnit would not have needed the drawings.

Relatedly, defendants argue that LuckyShot's plunger designs are not protected as trade secrets under the statute because they can be reverse engineered. ECF No. 19 at 5; ECF No. at 4. Reverse engineering is explicitly excluded from the definition of trade secrets under the federal trade secret misappropriations act. 18 U.S.C. § 1839(6). According to defendants "the physical dimensions of plungers, including the relative relationships between or combinations of physical features (which LuckyShot alleges are sold to the public), are easily ascertainable through simple measurement." ECF No. 31 at 4. Since "it is common knowledge that an object's physical dimensions and other physical characteristics can be easily observed, measured, and recreated," the argument goes, if LuckyShot's plungers can be physically measured then their designs can be recreated and they are not secret. ECF No. 19 at 5.

This argument also fails. At issue in this case are the plunger designs, not the physical plungers themselves. Even if the final product of a design may be publicly available, if the design itself is not it may still be a trade secret. Plaintiff alleges that Runnit created plunger designs for itself by modifying drawings it had already generated of LuckyShot designs. ECF No. 2 at ¶19. LuckyShot's designs were used "as a base." *Id.* If reverse engineering were as simple as defendants imply, they could just as easily have generated their designs by measuring

the physical plungers they produced for LuckyShot. But they did not. It seems obvious that to do so would have been less efficient and perhaps even unsuccessful. When it takes significant time, effort, and expertise to reverse engineer a design from a final product, this suggests the design itself has independent and significant value. And indeed, LuckyShot alleges in its complaint that it invested "substantial amounts of money and resources in the development" of these designs. ECF No. 2 at ¶50.

Defendants also argue that LuckyShot's allegations about its trade secrets are insufficiently specific. Defendants largely cite non-binding cases from other jurisdictions to support their argument. The one binding case defendants do cite does not require greater specificity than I have already discussed above. *zvelo*, 2019 WL 4751809, at *2. This court has in fact stated that "cases rejecting trade secret claims for lack of specificity are predominantly at later stages in the litigation process" than at a motion to dismiss. *SBM Site Servs., LLC v. Garrett*, No. 10-CV-00385-WJM-BNB, 2012 WL 628619, at *10 (D. Colo. Feb. 27, 2012) (collecting cases).

LuckyShot's allegations are sufficiently specific. Plaintiff does not claim it has "trade secrets" and leave it at that. Instead, LuckyShot mentions specific designs for a hollow ported barstock plunger, a rifle dual pad plunger, and a pad design Runnit drew and then misappropriated. ECF No. 2 at ¶21. Its complaint explains in detail exactly how Mr. Teske modified each of these designs. *Id.* at ¶¶22–24. LuckyShot's claims are not vague. There is no question that the plunger designs it gave to Runnit are the trade secrets at issue here. Defendants also claim that LuckyShot imprecisely refers to "pricing" and "quotes." ECF No. 31 at 4. Though LuckyShot has not listed individual numbers in its complaint, under the motion to

dismiss standard the Court may properly infer that plaintiff means pricing and quotes for the plungers it hired Runnit to manufacture or draw. In addition, this Court has found "prices" and "quotes" to be trade secrets in the past. *See e.g. Arctic Energy Servs., LLC v. Neal*, No. 18-CV-00108-PAB-KLM, 2018 WL 1010939, at *2 (D. Colo. Feb. 22, 2018).

Defendants lastly argue that LuckyShot did not adequately allege it kept its information secret. As defendants point out, nondisclosure or confidentiality agreements can suffice to support this element of the "trade secret" definition. *Arctic Energy Servs.*, 2018 WL 1010939, at *2. However, in this case, defendants argue, the nondisclosure agreement was never executed. ECF No. 31 at 6. In its complaint LuckyShot alleges that it "informed RUNNIT that RUNNIT would need to agree to a nondisclosure agreement . . . to which RUNNIT agreed." ECF No. 2 at ¶12. The complaint then states "[w]ith that agreement in place" plaintiff gave defendants the drawings so they could begin manufacturing parts for plaintiff's plungers. *Id.* at ¶13. Defendants assert this constitutes nothing more than an "agreement-to-agree" and thus LuckyShot did not take reasonable measures to protect its designs. ECF No. 31 at 6.

The complaint's language is admittedly ambiguous. It is unclear if the "agreement in place" refers to a signed nondisclosure agreement or a verbal agreement between plaintiff and defendants to sign a nondisclosure at some point in the future. But even if it is the latter, defendants' argument still fails. The statute's text does not require execution of a formal written agreement for a party to be put on notice of a trade secret's secrecy. 18 U.S.C. §§ 1831 *et seq*. Nor do defendants cite to any other law suggesting this requirement. A discussion between LuckyShot and Runnit about a nondisclosure to protect LuckyShot's designs, pricing, and quotes would have communicated the need for secrecy to Runnit. Furthermore, the drawings Runnit

itself produced included language stating they were "proprietary and confidential." *Id.* at ¶¶15–16. These facts are sufficient to allege that LuckyShot took reasonable steps to keep its plunger design information secret.

Defendants' motion separately seeks dismissal of this claim against Mr. Blood in particular. Mr. Blood asserts that even if a trade secret claim is sufficiently alleged against defendants Runnit and Mr. Cole, no such claim can be maintained against him. He argues plaintiff makes only "bare assertions" about his involvement as compared to the detailed allegations about Mr. Cole's conduct. ECF No. 31 at 10. While it is true the complaint describes Mr. Cole's involvement with greater specificity, *see generally* ECF No. 2, LuckyShot still alleges sufficient facts to implicate Mr. Blood. The complaint states that Mr. Blood met with Luckyshot to discuss Runnit's performing its local manufacturing. *Id.* at ¶8. Mr. Blood also "began pushing Runnit to produce and sell plungers by making changes to Luckyshot's files" and used the changes to drawings made by Mr. Teske to create different plunger designs. *Id*. at ¶¶19–20. Finally, LuckyShot asserts that when Mr. Teske stopped modifying the drawing files, Mr. Blood helped hire a replacement employee to continue drawing and redesigning the plungers. *Id.* at ¶28. Altogether these allegations amount to more than "bare assertions" regarding Mr. Blood's participation in the allegedly wrongful activities.

The motion to dismiss with respect to plaintiff's misappropriation of trade secrets claim is therefore DENIED as to all defendants.

3. <u>Intentional interference with prospective contractual relations</u>

Defendants raise no arguments in their motion to dismiss against plaintiff's second cause of action, intentional interference with prospective contractual relations. *See generally* ECF No.

19; ECF No. 31. The Court therefore DENIES the motion to dismiss on claim two as to all defendants.

3. Civil conspiracy

Colorado law imposes joint liability on two or more persons who conspire to commit a tortious act. COLO. REV. STAT. § 13-21-111.5(4). The elements of civil conspiracy in Colorado are that "(1) two or more persons; (2) come to a meeting of the minds; (3) on an object to be accomplished or a course of action to be followed; (4) and one or more overt unlawful acts are performed; (5) with damages as the proximate result thereof." *Ziegler v. Inabata of Am., Inc.*, 316 F. Supp. 2d 908, 918 (D. Colo. 2004) (citing *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989)). Though a conspiracy must be predicated on an unlawful act, "[t]here is no requirement of an underlying garden variety of 'tort' to establish a claim for civil conspiracy." *Double Oak Const., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003). The underlying acts need only be "unlawful and create an independent cause of action." *Id.*

The complaint alleges that Mr. Cole, Mr. Blood, and Runnit "consciously conspired and entered into an unlawful plan and agreement" to harm Luckyshot. ECF No. 2 at ¶62. The harms alleged include loss of customers, sales, business opportunities, and trade secrets. *Id.* LuckyShot's civil conspiracy claim appears to be predicated on both of its other claims: misappropriation of trade secrets and intentional interference with prospective contractual relations. LuckyShot asserts that defendants intentionally and willfully committed the wrongful acts of directing employees to modify their designs, sending the altered drawings to competitor

Well Master, and writing on the drawings that plaintiff had infringed on Well Master's patents. *Id.* at ¶63. All this was done, plaintiff states, for defendants' own financial gain. *Id.* at ¶64.

Defendants raise two arguments against the conspiracy claim in their motion to dismiss. First, they argue that LuckyShot fails to state a claim under Rule 12(b)(6) because "there is no private right of action for conspiracy to misappropriate a trade secret under 18 U.S.C. § 1836." ECF No. 19 at 6 (citing *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 271 F.Supp.3d 835, 842 (E.D.Va. 2017)). But as plaintiff points out, its complaint alleges a state law conspiracy claim, not a federal law conspiracy claim. ECF No. 24 at 13; *see also* ECF No. 2 at ¶65 (citing C.R.S. § 13-21-111.5(4)). LuckyShot's state law claim is partly *based* on a federal cause of action. But I have found no law suggesting a federal statute cannot underlie a Colorado conspiracy claim for joint liability under C.R.S. § 13-21-111.5(4). Nor do defendants cite any. Furthermore, LuckyShot also points to underlying unlawful acts of defendants that could fall under its state law claim of intentional interference with prospective contractual relations. *See e.g.* ECF No. 2 at ¶¶63–64 (defendants wrote on drawings that Luckyshot infringed Well Master's patents; defendants intended Luckyshot to lose customers, including Terra). This court has permitted civil conspiracy claims based on similar wrongful acts to go forward. *See e.g. DTC Energy Grp., Inc. v. Hirschfeld*, 420 F. Supp. 3d 1163, 1182–83 (D. Colo. 2019).

Second, defendants argue that this claim should be dismissed "pursuant to the Court's discretion to decline supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction." ECF No. 31 at 7. As discussed above, LuckyShot has pled sufficient facts for its misappropriation of trade secrets claim to go forward. This Court has refused to dismiss

that claim and thus retains original federal question jurisdiction over it. This Court also elects to exercise supplemental jurisdiction over both state law claims (see below).

I find that both of defendants' arguments on plaintiff's conspiracy claim lack merit. The motion to dismiss claim three is therefore DENIED as to all defendants.

4. Request for injunctive relief

"[I]njunctive relief is not a separate cause of action; rather it is one form of the relief for the other legal violations alleged." *Burns v. Freddie Mac*, No. 13-cv-2109-WJM-KLM, 2014 WL 1242032, at *2 n.1 (D. Colo. Mar. 26, 2014). Defendants raise no arguments in their motion against plaintiff's fourth "cause of action" for injunctive relief. *See generally* ECF No. 19; ECF No. 31. If this Court were to dismiss all substantive claims brought by LuckyShot, dismissal of its request for injunctive relief would of course also be appropriate. However, LuckyShot's substantive claims survive the motion to dismiss. The Court therefore DENIES the motion to dismiss as to claim four.

**B. Supplemental jurisdiction under 28 U.S.C. § 1367**

This Court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdictional that they form part of the same case or controversy. . . ." 28 U.S.C. § 1367. Supplemental jurisdiction is not mandatory but a matter of judicial discretion. *Est. of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1165 (10th Cir. 2004); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). A district court may decline to exercise such jurisdiction over a state law claim if (1) the claim raises a novel or complex state law issue; (2) the claim substantially predominates the original jurisdiction claim; (3) all original jurisdiction claims have been dismissed; or (4) when, in

exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c); *see also Nielander v. Bd. of Cty. Comm'rs of Cty. of Republic, Kan.*, 582 F.3d 1155, 1172 (10th Cir. 2009). District courts must consider "judicial economy, convenience, fairness, and comity" in deciding whether to exercise supplemental jurisdiction. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

Exercising supplemental jurisdiction is appropriate here. The Court has original jurisdiction over LuckyShot's misappropriation of trade secrets claim under 28 U.S.C. § 1331 as that claim arises under a federal statute. Plaintiff's state law claims—intentional interference with prospective contractual relations and civil conspiracy—arise out of the same nucleus of operative fact as its federal claim. The parties' business relationship, Runnit's modification of the plunger designs, and Mr. Cole's mailing of the designs to Well Master underlie all three causes of action. Defendants have put forth no arguments or evidence that these claims raise novel or complex issues of state law. Nor do plaintiff's state law claims predominate its federal trade secrets claim; in fact, the opposite is likely true, at least for the civil conspiracy claim. Finally, defendants have pointed to no other "compelling reasons" why this Court should not exercise supplemental jurisdiction.

Defendants argue that supplemental jurisdiction is inappropriate because the federal question claim should be dismissed. ECF No. 31 at 8. I have decided that LuckyShot's federal claim survives dismissal under FED. R. CIV. P. 12(b)(6). This argument thus has no merit.

Defendants next urge this Court to decline supplemental jurisdiction over LuckyShot's state law claims because it would be more efficient for the parties to litigate those claims in state court. ECF No. 31 at 8. Defendants argue that the pending Mesa County state court case

(2018CV3048) and this case only "differ slightly" and involve the same factual background. *Id.* I disagree. For purposes of addressing defendants' argument I take judicial notice of the complaint in the state law case. *See* ECF No. 24-1.

While this case is brought against individual defendants Mr. Cole and Mr. Blood, the state court case is brought against individual defendant Mr. Jeremy Anderson, whose name is absent from the complaint before this court. *Id.*; *see generally* ECF No. 2. In this case plaintiff alleges that defendants altered existing LuckyShot plunger designs and then mailed them to a competitor, which caused LuckyShot to be sued and to lose business from its biggest customer Terra. By contrast, in the state court case plaintiff alleges that Runnit manufactured plungers using LuckyShot's designs and then sold those plungers to LuckyShot's customers at lower prices than LuckyShot charged. ECF No. 24-1 at ¶¶24, 27. LuckyShot also alleges in its state court complaint that Runnit falsely informed LuckyShot's customers it owned the rights to and had designed LuckyShot's plungers, and that LuckyShot was no longer selling its plungers. *Id.* That complaint further alleges Runnit currently markets LuckyShot's plungers through Jeremy Anderson of Specialty Lift Systems. *Id.* at ¶29. These allegations form the core of LuckyShot's claims against Runnit in state court, and none of them is present in LuckyShot's complaint before this Court.

Judicial economy, convenience, fairness, and comity do not weigh towards this Court declining supplemental jurisdiction. The state law claims across both cases are sufficiently different that judicial economy would not be preserved by dismissing them here. Though dismissing those claims would undoubtedly be more convenient for defendants, it would be less convenient and less fair for LuckyShot who would be required to refile those claims in Mesa

County. Doing so would lead to an inefficient replication of pleadings and delay resolution of this case. Finally, retaining jurisdiction does not offend comity as defendants have given no indication that the state laws relevant to this case would more appropriately be applied by a state court. The Court therefore DENIES the motion to dismiss LuckyShot's state law claims under FED. R. CIV. P. 12(b)(1).

**ORDER**

Defendants' motion to dismiss [ECF No. 19] is DENIED.

DATED this 24th day of September, 2020.

BY THE COURT:

R. Brooke Jackson
United States District Judge