IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 19-cv-03034-RBJ

LUCKYSHOT LLC, a Colorado limited liability company,

    Plaintiff,

v.

RUNNIT CNC SHOP, INC., a Colorado corporation,
JAMES COLE, an individual, and
ANDREW BLOOD, an individual,

    Defendants.

## ORDER ON DEFENDANTS RUNNIT AND BLOOD'S MOTION FOR PARTIAL SUMMARY JUDGMENT

    Plaintiff LuckyShot brings three claims: (1) misappropriation of trade secrets; (2) interference with prospective contractual relations; and (3) civil conspiracy. Runnit and Mr. Blood move for partial summary judgment on all three claims as against them. The Court previously expressed doubt that a motion for summary judgment would be successful but did not preclude the effort. *See* ECF No. 57. On review of the motion, response and reply (ECF Nos. 58, 61 and 62), the motion is now denied.

## BACKGROUND

    LuckyShot LLLC manufactures and sells commercial oil and gas plungers. Historically its largest customer was Terra Energy Partners, LLC ("Terra"). In 2018 LuckyShot made

1

$943,420 in sales to Terra.  In 2019 LuckyShot made $362,821 in sales from Terra by the time this lawsuit was filed, and it projected sales of over $950,000 to Terra for the entire year.

Sometime before January 2016 LuckyShot contracted Central Valley Machine ("CVM"), a machine shop in Logan, Utah, to produce plunger drawings based on plaintiff's specifications. The CVM employee who prepared the drawings for plaintiff was named Neal Barrus, who marked his drawings "nealb."

In January 2016 LuckyShot met with representatives of Runnit CNC Shop, Inc. ("Runnit").  Defendant James Cole was Runnit's shop manager, and defendant Andrew Blood was another representative of Runnit.  The parties discussed Runnit's manufacturing plungers for plaintiff locally.   LuckyShot required a nondisclosure agreement governing the plunger drawings, pricing, quotes, and any future drawings Runnit would produce for plaintiff.  After Runnit agreed, LuckyShot provided defendants the CVM drawings so they could begin manufacturing the plungers.  LuckyShot also asked Runnit to prepare other drawings of plungers designed by LuckyShot.  Runnit produced an initial set of drawings which LuckyShot found to be of "inferior quality."  Those initial drawings contained the following:

> THE INFORMATION CONTAINED IN THIS DRAWING IS THE SOLE PROPERTY OF <INSERT COMPANY NAME HERE>.  ANYREPRODUCTION IN PART OR AS A WHOLE WITHOUT THE WRITTENPERMISSION OF <INSERT COMPANY NAME HERE> IS PROHIBITED.

LuckyShot then had Runnit create revised plunger drawings.  The second set of drawings contained slightly different language:

> **PROPRIETARY AND CONFIDENTIAL**
> THE INFORMATION CONTAINED IN THIS DRAWING IS THE SOLE PROPERTY OF LUCKYSHOT. ANY REPRODUCTION IN PART OR AS A WHOLE WITHOUT THE WRITTEN PERMISSION OF LUCKYSHOT IS PROHIBITED.

In 2017 the relationship between LuckyShot and Runnit soured. LuckyShot alleges that Runnit attempted to sell and patent LuckyShot's plungers as its own. These issues were initially "cleared up," and the parties continued doing business. According to LuckyShot, Runnit again tried to sell and patent the plungers as its own. At that point LuckyShot terminated Runnit's services and began manufacturing its own plungers.

LuckyShot alleges that around August or September 2018 Runnit began modifying the plunger design drawings it had generated for LuckyShot to create its own plunger designs. It alleges that Mr. Cole instructed Kenton Teske, another Runnit employee at the time, to modify the LuckyShot drawing files in the SolidWorks program. Mr. Cole instructed Mr. Teske to make various changes on three different LuckyShot designs. Jason Miracle, another Runnit employee, then produced plungers according to these altered designs at the direction of Mr. Cole. At some point Mr. Blood and Mr. Cole hired a new employee with CAD experience, Mr. Jeff Goodrich, who over modifying the LuckyShot plunger design drawings and designing new plungers for Runnit.

On May 7, 2019 LuckyShot received a "cease and desist" letter from its competitor Well Master Corporation ("Well Master"). The letter claimed that Well Master received two mailings containing drawings of LuckyShot's plungers. Well Master stated that these mailings were unsolicited and of unknown origin. It also claimed that the plunger designs infringed upon patents owned by Well Master. The letter instructed LuckyShot to immediately stop manufacturing and selling its plungers and to destroy its plunger inventory.

LuckyShot inspected the drawings and determined that three of them were created by CVM for LuckyShot, as indicated by the "nealb" annotation. LuckyShot deduced that the other

3

two drawings were created by Runnit because they contained the "Proprietary and Confidential" language included on all plunger design drawings that Runnit produced for LuckyShot. A handwritten note on the drawings sent to Well Master stated that LuckyShot had been copying Well Master's patents and selling them to Terra. According to LuckyShot, however, the two drawings created by Runnit had been modified in the exact ways described by Mr. Teske. These changes made the original designs reflect specifications of Well Master patents. The CVM drawings were unmodified. LuckyShot alleges that the mailings Well Master received can be traced to Mr. Cole. Defendants have denied knowledge of the source of the mailings in their answers, but recently Mr. Cole appears to have acknowledged being the source.

In addition to sending this letter to LuckyShot, Well Master informed Terra that LuckyShot had been infringing on Well Master's patents. As a result, LuckyShot was unsuccessful in its bid for a $1.6 million contract with Terra. Terra also stopped purchasing plungers from LuckyShot that it had ordered regularly prior to receiving this communication from Well Master. LuckyShot alleges that it also lost other bids and contracts based on rumors regarding its alleged patent infringement.

## ANALYSIS AND CONCLUSIONS

Preliminarily, a proposed jury instruction received from the parties and recently reviewed by the Court contains the following language:

> Runnit and Andrew Blood deny altering the plunger design and deny sending the designs and note to Well Master. To the extent those actions did in fact take place, Runnit and Andrew Blood claim they were done unilaterally by Defendant James Cole or others outside the scope of their employment with Runnit. James Cole denies that he acted unilaterally and without the participation or knowledge of Blood and/or RUNNIT, and James Cole asserts that he was privileged to send

4

the drawings to Well Master without any liability for doing so because he was protecting himself from liability for patent infringement.[1]

This dispute among Runnit, Mr. Blood and Mr. Cole by itself appears to be a genuine dispute of material fact that would preclude summary judgment. In addition, I will briefly comment on the elements of each of the three claims asserted by LuckyShot and the disputed issues that I see with respect to them.

### A. Misappropriation of Trade secrets.

Element 1, existence of trade secret: LuckyShot put its plunger designs into evidence, and it appears to be undisputed they are trade secrets. Defendants argued in their motion to dismiss that they weren't trade secrets because they could be reverse-engineered, but they've abandoned this argument in their motion for summary judgment. There's sufficient evidence under this element to prevent summary judgment.

Element 2, misappropriation: LuckyShot produced an affidavit from a former employee, Mr. Teske, who stated that he was directed jointly by Mr. Cole and Mr. Blood to modify the LuckyShot plunger designs. He will presumably have to testify at trial. This is sufficient evidence of misappropriation, and defendants don't really dispute this. They argue that the modifications can be separated from Mr. Cole's subsequent mailing of them, and thus no damages result from the modification itself. LuckyShot argues that the damages from lost contracts (and thus lost sales) wouldn't have happened but-for the modifications, because the modifications are what led Well Master to assume LuckyShot was infringing on their patent. I agree with plaintiff, and this is enough for a reasonable jury to link misappropriation to damages,

---

[1] The Court has informed the parties that it does not expect to acknowledge the existence of the alleged privilege.

though LuckyShot will need to prove actual damages and the link at trial. Defendants also note that the Mesa County District Court granted summary judgment on a similar question, and that the decision has preclusive effect here. I disagree. That court appears to have been addressing a different issue. There's sufficient evidence under this element to prevent summary judgment.

<u>Element 3, trade secret implicates interstate commerce:</u>   This does not appear to be disputed. LuckyShot sells to buyers across multiple states.

### B. <u>Interference with Prospective Contractual Relations</u>.

<u>Element 1, defendant is aware of a contract between plaintiff and third party:</u> Neither party addresses this element, and I have not found evidence of this in the record. However, since defendants didn't argue that evidence of this element was missing, it is not at this time a basis for dismissing this claim as to Blood and Runnit.

<u>Element 2, defendant intends third party to breach:</u>   Neither party addresses this element. However, Cole's mailing the designs to Well Master suggests an intent to interfere. My analysis under element 3 below explains why Blood and Runnit, the two moving parties, are implicated in these actions and should not be dismissed as parties. There is at least a factual dispute regarding intent for these parties, making summary judgment inappropriate.

<u>Element 3, defendant induces the breach or makes it impossible to perform:</u> There's sufficient evidence under this element to prevent summary judgment:

<u>Causation</u>:   The main argument by defendants under this claim is that there is insufficient evidence of causation because their actions can't be linked to the lost plunger sales. They argue that the only evidence linking the plunder design package sent to Well Master and lost sales is a series of unauthenticated emails and text messages from Terra and Flywheel which are

inadmissible. LuckyShot counters that they also offer an affidavit, and at trial they plan to call witnesses to authenticate the messages. This is an evidentiary issue that should be resolved at trial. LuckyShot should at least be afforded the opportunity to lay foundation for these documents. More importantly, if the Terra and Flywheel employees testify, the documents themselves might not be needed—they can explain their decision to cancel the contract live in court. Independently of these messages, the closeness in time between Well Master's sending the letters regarding alleged patent infringement and the contracts' being cancelled can lead to an inference of causation, which creates a factual dispute as to the link. There's sufficient evidence under this element to prevent summary judgment.

Involvement: Mr. Blood and Runnit also argue they can't be held liable for this claim because Mr. Cole acted unilaterally. They point to the "undisputed" evidence that Cole said in his deposition he acted alone, and that Mr. Blood didn't know about his mailing the package to Well Master. I have not seen a deposition transcript for Mr. Blood. In any event, in the quoted passage from the parties' proposed jury instruction *supra* Mr. Cole denies that he acted unilaterally. Also, Mr. Blood's knowledge of the Well Master mailing after the fact combined with his failure to remedy the situation could suggest he approved of or ratified Cole's decision, since it would be helpful to Mr. Blood and the company. There are credibility issues here that are better suited for resolution at trial.

Additionally, I agree with plaintiff that there's enough evidence to suggest Cole was acting within the scope of his employment, thus implicating Runnit via vicarious liability, since he prepared the package for Well Master with Runnit materials, mailed them during work hours, and mailed them alongside other Runnit mail. Moreover, ultimately the actions would benefit

Runnit.  There are thus factual disputes as to both Blood's knowledge of and involvement in the mailing and whether Cole was acting in the scope of his employment.

### C. <u>Civil Conspiracy</u>.

<u>Element 1, two or more persons:</u>  There is an affidavit from a former Runnit employee saying Mr. Blood and Mr. Cole, on behalf of Runnit, told him to modify the plunger designs they had from LuckyShot.  It seems undisputed that they were acting on Runnit's behalf.  There's sufficient evidence under this element to prevent summary judgment.

<u>Element 2, come to a meeting of the minds:</u>  The affidavit from the former Runnit employee suffices for this element as well.  Meeting of the minds can be inferred from the joint direction Mr. Cole and Mr. Blood provided with respect to civil conspiracy for trade secret misappropriation.  As to civil conspiracy for interference with contract, Mr. Blood's seeming acquiescence to Cole's sending the designs to Well Master appears to suffice.  In addition, per my comments above, the claim that Mr. Cole acted unilaterally appears to be disputed, and it is subject to a credibility determination by the jury.  Even if Mr. Blood wasn't initially, a reasonable jury could infer he was in on the plan once he knew about it and did nothing to thwart it.  There's sufficient evidence under this element to prevent summary judgment.

<u>Element 3, an object to be accomplished/course of action:</u>  There is evidence that Mr. Cole and Mr. Blood, on behalf of Runnit, directed the plunger design modification.  The sending of designs to Well Master can also constitute a course of action.  There's sufficient evidence under this element to prevent summary judgment.

<u>Element 4, overt unlawful acts performed</u>:  Neither party addresses this element.  This turns on whether claims 1 and 2 fail or succeed, so summary judgment is inappropriate based on this element.

<u>Element 5, damages result</u>:  Defendants argue that there is no evidence of damages resulting from the modifications of LuckyShot's designs.  I disagree.  As defendants note, LuckyShot must prove that damages were the proximate result of the conspiracy.  As I mentioned above, I find that there is sufficient evidence linking the modifications to Well Master's sending letters to LuckyShot and its prospective buyers, thus causing loss in sales, to establish proximate causation.  There is sufficient evidence under this element to prevent summary judgment.

## ORDER

Defendants Runnit and Blood's motion for partial summary judgment, ECF No. 58, is DENIED.

DATED this 5th day of April, 2021.

BY THE COURT:

*[signature: Brooke Jackson]*

_____
R. Brooke Jackson
United States District Judge